## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**OLIVIA MARIE, INC., d/b/a
ITALMODA,** a Michigan corporation,

        Plaintiff / Counter-Defendant,      No. 2:11-cv-12394

                                  Hon. Gerald E. Rosen

vs.

**TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA**, a foreign
Insurance Company,

        Defendant / Counter-Plaintiff.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S
### <u>MOTION FOR SUMARY JUDGMENT</u>

### I. INTRODUCTION

Plaintiff Olivia Marie, Inc., d/b/a/ Italamoda, a high-end furniture retailer, alleges that it suffered three covered theft losses at two of its locations for which it filed claims with its insurance company, Defendant Travelers Casualty Insurance Company of America.  Claiming that Defendant failed to pay statutory interest due on two of the insurance claims and refused to pay the third claim, Plaintiff filed a Complaint for breach of contract damages in Wayne County Circuit Court on April 29, 2011.  Defendant was served with process on May 12, 2011.

On June 1, 2011 Defendant removed the case to this Court and on that same date, filed its Answer to Plaintiff's Complaint.   Defendant's Motion for Judgment

on the Pleadings was filed a week later.  Two days later, on June 10, 2011, Defendant filed the Motion to Stay Discovery.  This Court denied Defendant's Motion for Summary Judgment WITHOUT PREJUDICE to allow for the completion of discovery, and denied Defendant's Motion to Stay Discovery as moot.

Following extensive and contentious motion practice, Defendant filed the present Motion for Summary Judgment on February 29, 2012.  Defendant also attained leave to file a Counterclaim, which it filed on March 30, 2012, alleging that Plaintiff made fraudulent and material misrepresentations in submitting its insurance claims.  Defendant's Counterclaim was not included in its Motion for Summary Judgment, and will be dealt with at a later date.

Having reviewed and considered Plaintiff's complaint, Defendant's motion, and Plaintiff's response to this motion, the Court has determined that oral argument is not necessary.   Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the briefs.  This opinion and order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

This is an insurance claims case involving three separate incidents of theft to two of Plaintiff's business properties.  Despite the substantial amount of discovery and extensive motion practice in this case, only a few key, undisputed facts are necessary for its disposition.  There is no dispute as to whether the insurance policy was valid at the time of the thefts.

2

Plaintiff Olivia Marie, Inc., d/b/a/ Italamoda, a high-end furniture retailer, suffered a theft loss at its Ann Arbor, MI location on or about December 8-9, 2008. It did not initially report this theft to its insurer, Travelers Casualty Insurance Company of America ("Defendant").  Over one year later, Plaintiff suffered two additional thefts at its leased warehouse in Taylor, MI.  The first theft ("Taylor I") occurred on July 5, 2009, while the second theft ("Taylor II") occurred on August 9, 2009.  Because neither the Ann Arbor location nor the Taylor warehouse were listed on Plaintiff's insurance policy at the time of the thefts, Plaintiff's only possible eligibility for coverage on these claims would be if the properties were covered under the "Newly Acquired or Constructed Properties" provision of Plaintiff's policy.

The "Newly Acquired or Constructed Properties" provision, as relevant to this case, provides theft coverage for 180 days following the acquisition of a property by sale or lease.  There is no question that both the Ann Arbor and Taylor I thefts occurred during the first 180 days following acquisition.  The Taylor II theft, however, occurred on August 9, 2009, which was 198 days after Plaintiff's original lease date of January 23, 2009, placing it outside the "Newly Acquired or Constructed Properties" provision of the policy.  Plaintiff argues, however, that the policy extends for 180 days from when a "risk of loss accrues to the insurer."  Pl. Resp. 11.  Thus, because Plaintiff did not take possession of the Taylor property until March of 2009, it contends that the Taylor II theft should be covered by the policy.

**A.    Plaintiff's Failure to Provide Sworn Statements in Proof of Loss**

Seven months after the Taylor II theft, Plaintiff submitted all three claims to Defendant, which were accompanied by a large binder of invoices.   Defendant received Plaintiff's claim on March 30, 2010, and retained Wendy Whan, an independent appraiser, to assist in organizing and evaluating the invoices.

On April 27, 2010, Defendant sent Plaintiff an email containing a blank "sworn statement of proof of loss" ("SSPOL"), in compliance with its obligations under the policy.  The relevant policy provision provides as follows:

> E.    PROPERTY LOSS CONDITIONS
>
> The following conditions apply in addition to the Common Policy Conditions:
>
> * * *
>
> 3.    Duties in the Event of Loss or Damage
>
> a.    You [Plaintiff] must see that the following are done in the event of loss or damage to Covered Property:
>
> * * *
>
> (7)    For loss or damage from other than "employee dishonesty" or "forgery" or alteration send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.
>
> * * *

4

      b.     We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records.  In the event of an examination, an insured's answers must be signed.

Under the terms of the policy, Plaintiff was required to sign and return the SSPOL within 60 days.  Defendant sent a follow-up email on May 12, 2010, in which it reminded Plaintiff that "I sent you proof of losses via email to be filled out, notarized and returned.  I have not received these to date."  Def.'s Br. Ex. 2, Sub-Ex. 2.

Plaintiff never returned the SSPOL.  Def.'s Br. Ex. 2, Req. for Admis. No. 7.

## B.   Count I - Plaintiff's Claim for Interest on the Ann Arbor and Taylor I Claims

After receiving a report from Ms. Whan on the verifiable amount of damages for the Ann Arbor and Taylor I claims, as well as additional information from Plaintiff, Defendant paid those claims on September 28, 2010.  Def.'s Br. Ex. 1, ¶¶ 11, 22; Def.'s Br. Ex. 2, Pl. Resp. to Def.'s Req. for Admis. No. 11; Def.'s Br. Ex. 6 at 163.

Plaintiff alleges that the timing of this payment violates MCL § 500.2006(1), which requires that "[a] person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its

5

policy[.]"  The statute states that payment "shall be considered paid on a timely basis if paid within 60 days after receipt of proof of loss by the insurer."  MCL § 500.2006(3).  Failure to make payment in a timely manner entitles claimant to 12% interest on the claim.  MCL § 500.2006(1).  Plaintiff contends that it is entitled to this interest payment because the claim was not paid within 60 days of Defendant's receipt of the insurance claim.

## C.    Count II - Plaintiff's Claim for Payment and Interest on the Taylor II Claim

Following investigation of the Taylor II claim, Defendant sent an email to Plaintiff's adjuster, stating that "we believe that the lease inception date is 1-23-09 and that the loss date of 8-9-09 falls outside the 180 days required by the policy to report a newly acquired location."  Def.'s Br. Ex. 20.  Defendant continued, informing Plaintiff's appraiser that "I will be preparing a denial letter for this 3rd theft loss" and "I will get the letter out to you and our insured as soon as possible."  *Id.*  Taking the position that its "acquisition" of the Taylor warehouse began with its physical occupation of that property in March 2009, and was therefore covered by the policy, Plaintiff's adjuster replied two minutes later, stating "we will be commencing litigation immediately."  *Id.*

On November 30, 2010, Plaintiff's adjuster sent an email to Defendant requesting that it reconsider its denial of the Taylor II claim.  Plaintiff's adjuster emailed Defendant again on December 6, 2010, requesting a copy of the denial letter.  On December 7, 2010, Defendant replied, stating "I am in the process of

6

preparing the denial letter for Taylor #2 loss and will forward you a copy once it is completed." Pl. Resp. Ex. 1.

Plaintiff's appraiser again emailed Defendant on December 16, 2010, again requesting a copy of the letter of denial and demanding statutory interest on the first two claims. Plaintiff emailed his appraiser the following day, indicating that he was ready to take legal action, but "cannot proceed at this time without a legal letter from you. Please advise me of a date that you can forward this letter to my attention." Def.'s Br. Ex. 23.

Defendant responded on December 21, 2010, informing Plaintiff that:

> Given your prior claims that our coverage position relating to claim number A5E4660 is incorrect coupled with the fact that Travelers has been provided conflicting information relating to the date of commencement of the lease of the Taylor warehouse and the facts and circumstances of the loss, Travelers has decided that it is necessary to clarify these facts and circumstances before rendering a formal claims decision. Accordingly, we are requesting that the insured submit to an Examination Under Oath ("EUO") in accordance with the policy duties.

Def.'s Br. Ex. 24.

Importantly, the final page of the letter provided:

> **This is not a denial of your claim.** It should be expressly understood that Travelers is continuing to investigate the facts and circumstances surrounding this loss under a full Reservation of Rights because of questions regarding the circumstances of the loss and coverage under the terms and conditions of the insurance policy.

Def.'s Br. Ex. 24.

On January 5, 2011, Defendant's attorney sent a letter to Plaintiff's attorney, recapping a conversation in which Plaintiff's attorney informed Defendant that (i) he had been retained to file suit against Defendant, (ii)

Plaintiff believed that its claim had been denied, and (iii) he had advised Plaintiff to refuse to submit to an Examination Under Oath ("EUO").   In response, Defendant's letter (i) reiterated its position that the claim had not been denied, but rather was still under investigation, and (ii) reminded Plaintiff of its contractual obligations, including (a) Defendant's right to conduct an EUO and (b) the policy's provision governing legal action, which provides:

> F.   COMMERCIAL PROPERTY CONDITIONS
>
> **\* \* \***
>
> 4.   Legal Action Against Us
>
> No one may bring a legal action against us [Defendant] under this Coverage Form unless:
>
> a.   There has been **full compliance with all the terms** of this Coverage Form; and
>
> b.   The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Def.'s Br. Ex. 26 (emphasis added).

Despite several letters of this nature, see *id.*, Plaintiff never submitted to an EUO.  Plaintiff filed suit on June 1, 2011, alleging -- with regard to the Taylor II loss (Count II) -- breach of contract for failure to pay the claim and violation of MCL § 500.2006 for failure to pay statutory interest.

## III. DISCUSSION

**A.     Defendant requests summary judgment because Plaintiff failed a condition precedent to Defendant's liability under the policy.**

Defendant requests summary judgment on both Count I and Count II of Plaintiff's Complaint.  Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, this Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In support of its motion, Defendant raises the affirmative defense that Plaintiff's failure to comply with the terms of the policy bars recovery on all of its claims under the policy.  There is no dispute at all regarding the facts required to address this defense.  Simply, Plaintiff does not dispute (i) that they received the SSPOL from Defendant; (ii) that Defendant requested that the SSPOL be signed and returned, as required under the contract; and (iii) that they did not comply with the 60 days SSPOL provision of the contract.  Plaintiff also does not contest that it refused to submit to an Examination Under Oath ("EUO"), as requested during Defendant's investigation of the Taylor II claim.  "Whether [Defendant] waived, or is otherwise estopped from strictly enforcing the 'proof of loss' requirement in light

9

of these facts is a purely legal question, as is the question of whether [Plaintiff] 'substantially complied' with the policy under Michigan law." *Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 571 (6th Cir. 2005). Consequently, summary judgment is an appropriate device for resolving this issue.

A federal court sitting in diversity must apply the forum state's law in accordance with the pronouncements of the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 76-79 (1938); *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir.2001) (citing *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir.1995)). If the state's highest court has not addressed the issue, then the federal court may consider decisions from the state appellate courts, but only to the extent those decisions reflect the likely outcome were the state's highest court to decide the issue. *See Allstate Ins. Co.*, 249 F.3d at 454. As noted, the parties agree that Michigan law applies in this case.

Count I of Plaintiff's Complaint arises out of the Ann Arbor and Taylor I claims and alleges breach of contract for Defendant's failure to pay the interest allegedly due under MCL § 500.2006, which requires timely payment of the benefits due under an insurance policy. MCL § 500.2006(1) ("A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy[.]" Thus, in order to determine whether Defendant timely paid the benefits due under the policy, this Court must first determine whether benefits were, in fact, "due" under the policy. Similarly, Count II alleges

breach of contract for (i) failure to pay the benefits allegedly due under the Taylor II claim and (ii) failure to pay statutory interest on the untimely payment of those benefits, again under MCL § 500.2006.  As all three questions first require a determination of whether -- and if so, what -- benefits are due under the contract, the Court will begin its analysis with the contract itself.

### 1.   Plaintiff's failure to satisfy its contractual obligations nullifies Defendant's liability

In its Answer, Defendant raises the affirmative defense that that both of Plaintiff's claims are barred because Plaintiff failed to satisfy its obligations under the policy.  Specifically, Defendant argues that Plaintiff's failure to produce a Sworn Statement in Proof of Loss ("SSPOL") within 60 days of submitting its claim constitutes the non-occurrence of a condition precedent to Defendant's obligations under the policy.

In interpreting an insurance policy, the Court must look to the terms of the policy itself and give effect to the parties' intention as expressed in the terms of the contract as a whole.  *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431, 433-34 (Mich. 1992).  The Court must enforce an unambiguous, completely integrated contract "according to its plain meaning, without looking to extrinsic evidence."  *Society St. Vincent Archdiocese v. Mt. Hawley Ins.*, 49 F. Supp. 2d 1011, 1016 (E.D. Mich. 1999).  The relevant policy provisions provide as follows:

E.    PROPERTY LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

\* \* \*

3.    Duties in the Event of Loss or Damage

a.    You [Plaintiff] must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

(7)    For loss or damage from other than "employee dishonesty" or "forgery" or alteration send us a **signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.**  We will supply you with the necessary forms.

\* \* \*

F.    COMMERCIAL PROPERTY CONDITIONS

\* \* \*

4.    Legal Action Against Us

No one may bring a legal action against us [Defendant] under this Coverage Form unless:

a.    There has been **full compliance with all the terms** of this Coverage Form; and

b.    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

The plain terms of the policy -- agreed to by both parties -- state that Plaintiff "must" provide Defendant with a "signed, sworn proof of loss" within 60 days of Defendant's request. These terms are simple, definite, unambiguous, and must be understood in their ordinary sense. *Maryland Cas. Co. v. Nellis*, 75 F.2d 23, 25 (6th Cir. 1935) (citing *Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489, 492 (1932)) ("The condition that proof of death must be furnished to the company within two months from the time of death is definite. The terms used are simple and they must be taken and understood in their ordinary sense."). Plaintiff not only agreed to provide a SSPOL within 60 days of Defendant's request, but further agreed that it could not bring suit against Defendant unless it had complied with this condition. *Id.* ("It is uniformly held that such a provision is reasonable and intended for the protection of the insurer. The insured agreed that it would be observed and that a claim not brought in accordance with it would be forfeited.").

It is undisputed that -- despite being sent the SSPOL form and then being reminded to complete the form -- Plaintiff did not comply with this requirement. Indeed, Plaintiff never submitted a SSPOL on any of its three claims. Thus, the only remaining issue is the effect of these provisions on Defendant's obligation to provide coverage under the policy.

The Supreme Court of Michigan and Sixth Circuit have long recognized that "compliance with the requirement in the policy to furnish proof of loss within 60 days is a condition precedent to liability of the insurer." *Fenton v. National Fire Ins. Co. of Hartford, Conn.*, 235 Mich. 147, 150, 209 N.W. 42, 43 (Mich. 1926); *see*

*also Maryland Casualty Co. v. Nellis*, 75 F.2d 23, 25 (6th Cir. 1935) ("We have held with federal courts generally that compliance with such a provision of a policy is a condition precedent to the enforcement of the policy.").  A condition precedent "is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."   Restatement (Second) of Contracts § 224 (1981).   "The failure to conform with the stated condition obviates the duty of the other party to perform the contract."  *Martin v. Transamerica Occidental Life Ins. Co.*, 2002 WL 1041337, *1, *4 (E.D. Mich. May 13, 2002) (Lawson, J.) (citing *id.*); *see also* Restatement (Second) of Contracts § 225(2) (1981). "When such a condition is clear and requires no construction, it is unnecessary to pass upon the question of whether the condition is reasonable or unreasonable, and there is no fact issue to submit to the jury."  *Id.* (citing *Merrill v. Fidelity & Cas. Co. of New York*, 304 F.2d 27, 28–29 (6th Cir. 1962) (applying Michigan law)).   As the Supreme Court of Michigan stated in *Gambino v. Northern Ins. Co. of New York*, 234 Mich. 651 655, 209 N.W. 119, 120 (Mich. 1926), "Plaintiff's right to indemnity flows from this policy, constituting the written agreement between the parties which they voluntarily entered into and of which these conditions form a part. Failure by plaintiff to observe the condition precedent of this executory contract was failure to perform the contract on its part. It first breached the contract, and by such nonperformance it released the other contracting party."

Thus, "though limited exceptions exist, it remains the general rule under Michigan law . . . [t]hat 'the failure to file a signed and sworn proof of loss within

sixty days bars recovery on a claim without regard to whether the insurer is prejudiced by such failure.'" *Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 573 (6th Cir. 2005) (quoting *Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich. App. 138, 433 N.W.2d 380, 383 (Mich. App. 1988) ("Clearly, the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim without regard to whether the insurer is prejudiced by such failure."); *see also, e.g.*, *Helmer v. Dearborn Nat. Ins. Co.*, 319 Mich. 696, 700, 30 N.W.2d 399, 401 (Mich. 1948) ("A failure to furnish proofs of loss within the time required by an insurance policy bars an action thereon, unless waived, where the policy further provides that such failure shall work a forfeiture of such right of action."); *Fenton v. National Fire*, 235 Mich. 147, 151, 209 N.W. 42, 43 (Mich. 1926) ("the failure to furnish proof of loss within the time provided in the policy is fatal to plaintiff's claim."); *Essa v. Pioneer*, 2011 WL 2625696, at *1, *2 (Mich. App. July 5, 2011) ("The Michigan Supreme Court has specifically held that the failure to provide an insurer with proof of loss within the deadline bars recovery by the insured.").

Consequently, Plaintiff's admitted failure to comply with the terms of the insurance policy bars recovery unless it can prove that its non-compliance was excused. This can be accomplished by showing either (i) that Defendant waived the SSPOL requirement or is otherwise estopped from asserting this affirmative defense, or (ii) that Plaintiff substantially complied with the terms of the policy. *See Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 570 (6th Cir. 2005) ("Michigan law recognizes limited exceptions to this seemingly harsh rule: 1) waiver and/or estoppel

based on an insurer's conduct; and 2) substantial compliance with a policy's terms by the insured.").

### 2.   Plaintiff was not excused from its obligations under the policy

#### a.   Plaintiff's failure to provide a SSPOL was not induced by Defendant's actions

Defendant has not waived, nor is it otherwise estopped from enforcing, the SSPOL provision of the policy. "A waiver is a voluntary relinquishment of a known right. Estoppel is based on some misleading conduct or language of one person which, being relied on, operates to the prejudice of another, and is applied to the wrongdoer by the court in denial of some right, which otherwise might exist, to prevent a fraud." *Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich. App. 138, 146, 433 N.W.2d 380, 383 (Mich. App. 1988) (quoting *Dahrooge v. Rochester-German Ins. Co.*, 177 Mich. 442, 451-52, 143 M.W. 608 (Mich. 1913)). However, "an insurer may impliedly waive the "proof of loss" requirement in its policy if its conduct could *reasonably* create a belief in an insured's mind that proof of the loss is unnecessary." *Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 572 (6th Cir. 2005). Under Michigan law, Plaintiff bears the burden of "proving that the insurer waived the policy provision requiring a proof of loss statement." *Helmer v. Dearborn Nat'l Ins. Co.*, 319 Mich. 696, 30 N.W.2d 399, 402 (Mich. 1948) (citing *Struble v. Nat'l Liberty Ins. Co.*, 252 Mich. 566, 233 N.W. 417, 418 (Mich. 1930)).

Thus, whether dubbed "waiver" or "estoppel," Plaintiff must prove that Defendant's conduct -- through explicit waiver, implicit waiver, or other action --

reasonably caused Plaintiff to believe that a SSPOL was not necessary under the policy. *Struble v. Nat'l Liberty Ins. Co. of America*, 252 Mich. 566, 569, 233 N.W. 417 (Mich. 1930) (waiver "must arise from conduct that induces action in reliance upon it"); *Ratz v. Firemen's Ins. Co.*, 263 Mich. 583, 248 N.W. 908 (Mich. 1933) (no waiver or estoppel because "plaintiff was not misled or lulled into inactivity by anything the adjuster did or said, and . . . he did not rely on the adjusters statements or acts to his injury."); *Compton v. Michigan Millers Mutual Insurance Co.*, 150 Mich. App. 454, 389 N.W.2d 111 (Mich. App. 1986) (insurer estopped from enforcing SSPOL provision where insurer claimed it would prepare the proof of loss forms itself and failed to provide forms to insured).   In this way, waiver of a condition precedent to a contractual obligation sounds in estoppel.   *Ratz v. Firemen's*, 263 Mich. at 584 ("waiver in such cases is in the nature of estoppel.").

In order for Plaintiff to have relied on Defendant's actions to its detriment in this case, Defendant's action must have reasonably caused Plaintiff's non-compliance with the terms of the contract.   "For equitable estoppel to apply, the [party raising the defense] must establish that (1) the [other party's] acts or representations induced the [party raising the defense] to believe that the . . . clause would not be enforced and that coverage would be provided, (2) the [party raising the defense] justifiably relied on this belief, and (3) the [party raising the defense] was prejudiced as a result of its reliance on its belief that the clause would not be enforced and coverage would be provided." *Auto Owners Ins. Co. v. Ferwerda Enterprises, Inc.*, 283 Mich. App. 243, 257, 771 N.W.2d 434, 443 (Mich. App. 2009),

*rev'd on other grounds*, 485 Mich. 905, 773 N.W.2d 17 (Mich. 2009) (quoting *Grosse Pointe Park v. Michigan Muni. Liability & Prop. Pool*, 473 Mich. 188, 204, 702 N.W.2d 106 (Mich. 2005)).   More specifically, for Defendant's asserted waiver or other conduct to have induced Plaintiff to believe that it was not required to submit its SSPOL within 60 days, as outlined in the contract, Defendant's waiver or other conduct must have created that understanding before the 60 day period expired. "When insured claims that he or she was prevented from complying with policy provision because he or she relied on insurer's conduct or statements, it necessarily follows that insurer's conduct must have occurred within the period in which there was still time for insured to comply with policy provisions."   13 Couch on Ins. § 194.6 (3d. ed. 2012) (citing *Gambino v. Northern Ins. Co. of New York*, 234 Mich. 651, 209 N.W. 119 (Mich. 1926) ("How plaintiff can claim under this state of facts that he did not furnish proof of loss by reason of this conversation [which took place long after proofs due] and thereby estop defendant from making this defense is not plain to see.")).

Thus, Defendant's waiver or other action justifying estoppel must have taken place within the first 60 days after the reported loss.   The facts of this case cannot support such a finding.   Defendant received all three of Plaintiff's claims on March 30, 2010.   Def.'s Br. Ex. 7.   It is undisputed that on April 27, 2010, Defendant sent Plaintiff a written request for documentation and information, along with a blank SSPOL which was to be filled out, notarized, and returned.   *See* Def.'s Br. Ex. 2, Pl. Resp. to Def.'s Req. for Admis. No. 7; Def.'s Br. Ex. 2, Sub-Ex. 2.   Further, on March

12, 2010, Defendant sent Plaintiff's appraiser a follow-up email, reiterating its request for the SSPOL and other documentation. Def.'s Br. Ex. 2, Sub-Ex. 2. By providing Plaintiff with a SSPOL form as required by the policy, and then reminding Plaintiff that this proof must be received, Defendant fulfilled and exceeded its obligations under the policy. Plaintiff points to no evidence from this time period suggesting that Defendant excused compliance with this requirement. Consequently, Plaintiff has not met its burden of demonstrating that Defendant's actions induced Plaintiff to believe that a SSPOL was not required during the period in which compliance was still possible.

Rather than argue that some action during this time period constitutes a waiver of its contractual obligations, however, Plaintiff eschews the relevant time period analysis and focuses on events occurring after this period in an attempt to demonstrate that Plaintiff either (i) waived this requirement after the fact or (ii) has subsequently waived its right to argue that it has no obligations under the policy. Because the factual differences between the Ann Arbor and Taylor I claims (Count I) and the Taylor II claim (Count II) implicate different legal arguments, the two counts will be addressed separately.

> **i.  Defendant's decision to pay the Ann Arbor and Taylor I Claims (Count I) did not excuse Plaintiff's performance because payment is not a tacit admission of liability**

Plaintiff's argument that Defendant is estopped from enforcing the requirements of the policy states, in its entirety, as follows:

> Incredibly, Travelers argues that it is not required to pay penalty interest because of Italmoda's failure to submit a sworn statement in proof of loss for its claims. How such argument can be made with a straight face at this point of the litigation is unknown. Clearly Travelers waived this contractual requirement when it paid the claims.

Pl. Resp. 18.

Setting aside the requirement, discussed above, that action constituting waiver must have induced Plaintiff's reliance during a timeframe in which Plaintiff could still have complied with the policy's SSPOL precondition -- and ignoring Plaintiff's counsel's hyperbolic and conclusory argumentation -- Plaintiff misconstrues the significance of an insurance payment. Under Michigan law, payment of benefits under an insurance policy does not serve as a tacit admission of liability, nor does it operate as a waiver of a valid defense: "[t]he fact that an insurer has paid some benefits to an insured party does not preclude it from later asserting that it owes nothing when the insured party files suit." *Columbia v. Prudential Ins. Co.*, 116 F.3d 1480 (6th Cir. 1997) *(*quoting *Calhoun v. Auto Club Ins. Ass'n*, 177 Mich. App. 85, 89, 441 N.W.2d 54, 56 (Mich. App. 1989) (citing *Hammermeister v. Riverside Ins. Co.*, 116 Mich. App. 558, 323 N.W.2d 480, 482 (Mich. App. 1982), *modified*, 419 Mich. 872, 347 N.W.2d 696 (Mich. 1984)), *abrogated on other grounds*, *Tousignant v. Allstate Ins. Co.*, 444 Mich. 301, 506 N.W.2d 844 (Mich. 1993)). Indeed, "[a]n insurer might rationally conclude it is better to pay something on a suspect claim than to litigate the matter in the hope of paying nothing at all yet to take the position that it has no liability to the insured, where the insured files suit." *Hammermeister*, 323 N.W.2d at 482. Any other result

might, in such circumstances, fall under the rubric, "No good deed goes unpunished."

Thus, Plaintiff's assertion that Defendant's September 28, 2010 decision to pay the Ann Arbor and Taylor I claims acts as a *post hoc* waiver of Plaintiff's contractual obligation to submit a SSPOL, and therefore obligates payment of statutory penalty interest, is without merit. Defendant cannot have failed to make timely payment on a claim it had no obligation to satisfy.

### ii. Defendant is not estopped from enforcing the policy on the Taylor II Claim (Count II) because Defendant never denied coverage on that claim

Plaintiff argues that Defendant is estopped from strictly enforcing the policy on the Taylor II claim because "once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *Smit v. State Farm Mut. Automobiles Ins. Co.*, 207 Mich. App. 674, 679-80, 525 N.W.2d 528 (Mich. App. 1994). The purpose of this policy is to provide notice of the defenses upon which an insurer intends to rely during litigation. Plaintiff contends that Defendant's two emails -- dated November 23 and December 7, 2010 -- indicating Defendant's intent to deny coverage because "the lease inception date . . . falls outside the 180 days required by the policy" constitute denial of coverage sufficient to waive all other defenses.

As an initial matter, it is worth noting that the "waiver" asserted here is different from the "waiver" relating to the Plaintiff's obligations under the policy.

As discussed, a waiver of Plaintiff's contractual obligations -- like that asserted regarding Count I, *supra* § III.A.2.a.i -- must be made during a time period in which Plaintiff could have reasonably relied on that waiver to its detriment. Consequently, for an insurer to waive an insured's contractual obligations by denying coverage, that denial must have occurred while the insured was still capable of satisfying the precondition, making satisfaction of the condition moot. *See, e.g.*, *Maryland v. Nellis*, 75 F.2d 23, 25 (6th Cir. 1935) ("When the letter was written, the time for furnishing proof of death had long expired, in view of which the letter could not operate as a waiver or an estoppel."); *Dailey v. Mid-States Ins. Co.*, 321 Mich. 438, 441-42, 32 N.W.2d 698, 700 (Mich. 1948) ("As above noted, this letter to plaintiff from defendant's lawyers was written a considerable time after the expiration of the 60 day period within which the policy required proof of loss, and further there is nothing in the communication inconsistent with the defense that because plaintiff failed to file proof of loss as required in the policy he may not recover thereon.  The undisputed testimony discloses that plaintiff did not file proof of loss, which is required in the policy as a condition precedent to recovery thereon; and further the record discloses without controversy that there was no waiver by defendant of the policy requirement as to proof of loss.").  Thus, for an insured to argue during litigation that it was not required to fulfill its contractual obligations, it must demonstrate that the waiver occurred within the relevant time frame.

This is slightly different than the waiver argument presented by Plaintiff in relation to Count II, which is based upon procedural fair play and good faith.  "This

court has many times held, and it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice." *Smith v. Grange Mut. Fire Ins. Co. of Mich.*, 234 Mich. 119, 122-23, 208 N.W. 145, 146-147 (Mich. 1926). This rule allows the insured an opportunity to evaluate the rationale behind denial of its claim and adequately prepare for litigation, without have to respond to the myriad of potential reasons the insurer may concoct after the fact to justify its decision.

This distinction is moot in the present case, however, because Defendant never denied Plaintiff's claim. Because the terms of a denial are binding and limit an insurer's future defenses, an "insurer who merely expresses an opinion that the matter is not covered under the terms of the policy has not yet breached the contract." *Fireman's Fund Ins. Companies v. Ex-Cell-O Corp.*, 790 F. Supp. 1318, 1330 (E.D. Mich. Jan. 17, 1992). Further, subsequent letters stating "this is not a denial of your claim" and that the insurer is "continuing [its] investigation into this matter" are sufficient to withdraw and nullify a prior denial of coverage.

Defendant's two emails purportedly denying coverage did not constitute a denial of Plaintiff's claim. The text of the emails themselves demonstrates only that a formal denial letter was still being prepared. Indeed, the necessity of a formal denial letter is made abundantly clear by Plaintiff's argument in this case. Because

23

a formal denial of coverage must state all of Defendant's proposed defenses -- lest they be waived -- the Defendant must take the time to thoroughly enumerate all of the purported bases for its denial.  Two emails to the Plaintiff's appraiser indicating only an intent to deny coverage and referencing a yet-to-be-completed letter of denial cannot constitute a formal denial of coverage.  This reality was recognized by both Plaintiff and Plaintiff's adjuster, who stated, on December 17 and December 16, 2010, respectively, "I cannot proceed [with legal action] at this time without a legal letter from you.  Please advise me of a date that you can forward this letter to my attention[]" and "[I] [s]till don't have a copy of the denial letter either."  Def.'s Br. Ex. 23.

But even if Defendant's emails were to constitute a denial, the denial was clearly withdrawn by Defendant's subsequent communications.  Plaintiff's assertion that "[a]t no time did Travelers in any way, shape, or form rescind this denial" cannot survive even a cursory review of the record.   In response to Plaintiff's request to reconsider its decision and threat to commence litigation, Defendant sent an email and letter to Plaintiff and his appraiser on December 21, 2010.  In that correspondence, Defendant stated:

> **This is not a denial of your claim.**   It should be expressly understood that Travelers is continuing to investigate the facts and circumstances surrounding this loss under a full Reservation of Rights because of questions regarding the circumstances of the loss and coverage under the terms and conditions of the insurance policy.

Def.'s Br. Ex. 24.

24

Because Defendant did not deny Plaintiff's claim, much less on any specific grounds inconsistent with a denial for failure to comply with the terms of the policy, Defendant has not waived its right to argue that Plaintiff's failure to submit a SSPOL within 60 days of Defendant's request nullified its liability under the policy.

### b.   Plaintiff has not substantially complied with the policy because it never a sworn statement of its loss

Plaintiff's final argument, although not stated explicitly, appears to be that it "substantially complied with the public policy underlying the proof of loss statements" such that it would be inequitable to allow Defendant to strictly enforce the SSPOL precondition.   In support, Plaintiff references the sheer amount of documentation provided to Plaintiff in response to its requests, stating that it "complied with Travelers requests at every turn" and "submitted so much documentation that [Defendant] hired . . . an outside claims adjuster, to help with the review of these materials."  Pl. Resp. 16, 5.

SSPOLs are not "meaningless hoops through which insureds must jump." *Appleton*, 132 F. App'x at 572.  Rather, they serve the important purpose of "(1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud." *Wineholt v. Cincinnati Ins. Co.*, 179 F. Supp. 2d 742, 752 (W.D. Mich. July 27, 2001) (citing *Barnes v. State Farm Fire & Cas. Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985)). The most critical of these purposes is the prevention of fraud, which SSPOLs achieve by "obtain[ing] a statement of the loss from the insured *under oath* such as

25

will subsequently bind the insured and protect against the imposition of fraud." *Barnes v. State Farm Fire & Cas. Co.*, 623 F. Supp. 538, 540 (E.D. Mich. Dec. 11, 1985) (emphasis added).

Thus, no amount of raw data submitted by Plaintiff can satisfy the central purpose of the SSPOL provision. *See Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 574 (6th Cir. 2005) (finding no substantial compliance despite insured's "submi[ssion of] what they characterize as 'voluminous information' in support of their claim, including personal property inventories and unsworn recorded statements"). Without a statement under oath binding Plaintiff to the veracity of its claim, Defendant has no means of protecting itself against fraud. Indeed, Plaintiff's absolute failure to provide a SSPOL -- "the most important part of their known obligations" -- for any of its three claims "without the benefit of a *legally* satisfactory excuse, must operate to [its] detriment." *Appleton*, 132 F. App'x at 575. Indeed, it is clear from Defendant's subsequent response to Plaintiff that Defendant deemed it very important to receive sworn, under oath, statements concerning the loss from Plaintiff, as it explicitly required Plaintiff's to submit -- pursuant to the policy -- to an Examination Under Oath ("EUO"). Plaintiff failed -- indeed, refused -- to do so. Such a failure and refusal, particularly in light of the fact that this was required by the policy, demonstrates why satisfaction of this term is a precondition to insurer liability under Michigan law. Defendant's subsequent Counterclaim against Plaintiff for fraud on all three claims at issue (currently pending in this

Court) further reinforces the serious policy considerations underlying SSPOL provisions.

Because this Court concludes that Defendant was not contractually obligated to reimburse Plaintiff under the terms of the Policy, Defendant has no liability for either the timing of those payments under MCL § 500.2006 or failure to reimburse Plaintiff for the Taylor II claim.  Defendant's motion for summary judgment is therefore GRANTED.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiff's claim against Defendant is DISMISSED in its entirety WITH PREJUDICE.

IT IS FURTHER ORDERED that both parties shall appear before the Honorable Gerald E. Rosen, United States District Judge, in his chambers located in Room 733, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan on the 10TH  day of March, 2013, at 10:00 a.m to discuss a schedule for resolving Defendant / Counter-Plaintiff's pending claims against Plaintiff / Counter-Defendant.

**IT IS SO ORDERED.**

Dated:  February 13, 2013                    s/Gerald E. Rosen
                                             GERALD E. ROSEN
                                             CHIEF JUDGE, U.S. DISTRICT COURT

11-12394  Olivia Marie, Inc.  v. Travelers Casualty Ins. Co. of  America
Opinion and Order Granting Defendant's Motion for Summary Judgment

## CERTIFICATE OF SERVICE

**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Wednesday, February 13, 2013, by electronic and/or ordinary mail.**

**s/Julie Owens**
Case Manager, (313) 234-5135